```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____         │
│ DATE FILED: _8-10-11_            │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
K.F., individually and on behalf of L.A.,
a child with a disability,

                       Plaintiff,

       -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    Defendant.
------------------------------------------------------------x

10 Civ. 5465 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Plaintiff brings this action under the fee shifting provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiff asserts that she was the prevailing party and is entitled to attorney's fees and expenses in the amount of $110,837.87 incurred by the Law Office of Andrew K. Cuddy. The New York City Department of Education ("DOE") opposes the fee application on a variety of grounds, principally including: (1) the hourly rate sought by these attorneys is not reasonable under the circumstances presented; (2) a reasonable attorney's fee ought not to include the time spent by attorneys, Andrew Cuddy and Michael Cuddy, travelling between their home cities, Auburn, NY and Ithaca, NY, and the location of the hearing, Brooklyn, NY – a five hour trip of over 240 miles; and (3) a reasonable attorney's fee ought not to include the participation of the two Messrs. Cuddy at the due process hearing.

        For the reasons discussed below, the application is granted in part and denied in part. The Court concludes that plaintiff is a prevailing party and entitled to a

reasonable attorney's fee.  A reasonable hourly rate for these attorneys based on prevailing rates in the Southern District of New York is $375 per hour and $125 per hour for the paralegal.  A reasonable attorney's fee in this case does not include the travel time to and from the attorneys' home cities to Brooklyn nor the time charges of a second senior attorney at the hearing.

DISCUSSION

"In any action or proceeding brought under [the IDEA], [a] court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I). The fee award "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  Id. § 1415(i)(3)(C). The IDEA fee-shifting provisions are interpreted in the same manner as other civil rights fee-shifting statutes.  See A.R. *ex rel.* R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 73 (2d Cir. 2005) (citing I.B. *ex rel.* Z.B. v. N.Y.C. Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003) (per curiam)).

In determining whether to award attorney's fees under a federal fee-shifting statute such as IDEA, the court must undertake a two-pronged inquiry.  See Mr. L v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006).  First, the Court must "determine whether the party seeking the award is in fact a prevailing party."  Id.  "If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorney's fees."  Id.

2

I.       Prevailing Party

Plaintiff K.F. is the parent of L.A., a child with autism.  (Pl.'s Mem. at 1.)
In September 2009, K.F. and L.A. moved to New York City from Puerto Rico.  (Id.)
Shortly thereafter, in October 2009, K.F. referred L.A. to the DOE's committee on
preschool special education.  (Id.)  In her previous school district in Puerto Rico, the child
was classified as a preschool student with a disability.  (Id.)  In January 2010, having not
received any special education services or placement in any school program by the DOE,
the plaintiff, through the Cuddy law firm, requested an impartial due process hearing
alleging various violation of the IDEA.  (Id.)

The hearing was convened and the Impartial Hearing Officer ("IHO")
found that the DOE had not provided the child with a free and appropriate public
education for the 2009-10 school year.  (IHO Findings of Fact & Decision at 15, attached
at Decl. of Andrew Cuddy, Ex. B.)  The IHO ordered the development of a new
Individualized Education Program ("IEP") and also ordered the child to receive certain
additional individual services, including 20 sessions of speech and language, 10 sessions
of occupational therapy and 272 hours of other services.  (Id.)  As the hearing resulted in
an administrative order from the IHO granting relief in favor of the parent as against the
DOE, K.F. is a prevailing party.  See A.R. ex rel. R.V., 407 F.3d at 75 ("[A] plaintiff who
receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a
'prevailing-party.'").

II.      Calculation of Attorney's Fees

Having concluded that the parent is a prevailing party, this Court may
award reasonable attorney's fee "based on rates prevailing in the community in which the

action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §
1415(i)(3)(B)(i)(I); id. § 1415(i)(3)(C).  The principles outlined by the Second Circuit in
Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182,
190 (2d Cir. 2008) apply to attorney's fee applications under the IDEA.  See E.S. v.
Katonah-Lewisboro Sch. Dist., 09 Civ. 4770 (LAP), 2011 WL 1560866, *3 (S.D.N.Y.
Apr. 20, 2011); see also Green v. City of New York, 403 F. App'x 626, 629 (2d Cir.
2006) (non-precedential summary order).

  A.  The Southern District of New York is the
      Community in Which the Action or Proceeding Arose

    The dispute in this case was pursued through an IDEA administrative
proceeding held in Brooklyn, a county in the Eastern District of New York.  The events
giving rise to the hearing occurred in the Bronx, a county in the Southern District of New
York, where the child resided.   The law firm representing the plaintiff in the IDEA
proceeding is based in the Northern District of New York.  I conclude that in this case the
most significant factor in determining "the community in which the action or proceeding
arose" is the locus of where the child was denied a free and appropriate public education.
That was in this District and this District's billing rates will be applied.  See A.R. ex rel.
R.V., 407 F.3d at 80-82 (concluding that the district court did not abuse discretion in
applying Southern District of  New York rates where students attended schools in that
district but administrative hearings were held in both the Southern and Eastern Districts
of New York).

As the DOE notes, these attorneys are routinely paid at lower hourly rates for similar services in the district where they customarily practice.[1]  This does not, however, foreclose the grant of Southern District of New York rates for their services in this matter.  The Second Circuit has noted that an out-of-district attorney may be entitled to receive a higher rate when practicing in this district than the rate the he or she ordinarily receives in the community in which he or she usually practices.  Id. at 80 (citing Donnell v. United States, 682 F.2d 240, 251-52 (D.C.Cir. 1982)).  This result is thoroughly consistent with the generally understood concept of a rate prevailing in a geographic market.[2]

B.      Reasonableness of the Hourly Rate

Plaintiff seeks an hourly rate of $450 per hour for the two Messrs. Cuddy and for a third lawyer, Jason H. Sterne, and $200 per hour for paralegal Diane Zambotti.  "The reasonable hourly rate is the rate a paying client would be willing to pay."  Arbor Hill, 522 F.3d at 190.  The Court should endeavor to determine "the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (internal quotation marks omitted).  The court "should . . . bear in mind that a

---

[1] In two IDEA cases decided in the Northern District of New York, Judges Mordue and Scullin, Jr., set the reasonable hourly rate for attorneys Andrew Cuddy and Jason Sterne, Esq. at $210 per hour and $80 per hour for Ms. Zambotti.  V.G. v. Auburn Enlarged Cent. Sch. Dist., 06 Civ. 531 (NAM/GHL), 2008 WL 5191703, *15 (N.D.N.Y. Dec. 9, 2008); J.S. v. Crown Point Cent. Sch. Dist., 06 Civ. 159 (FJS/DRH), 2007 WL 475418, *6 (N.D.N.Y. Feb. 7, 2007).  In each instance of a citation to an hourly rate in a reported decision, the Court has remained mindful of the likely increase in rates during the passage of time since the reported decision and the present.

[2] By way of example, a locksmith who lists his phone number in the Manhattan telephone directory and renders services to a customer in Manhattan would be expected to charge Manhattan rates for services rendered, regardless of whether his shop is located in Rockland County, NY, or the Upper West Side of Manhattan.  That same locksmith would be expected to charge his Rockland County customers a lower rate consistent with the prevailing market rate in Rockland County.  Similar to the locksmith's phone listing, The Law Office of Andrew K. Cuddy maintains a website featuring the Manhattan skyline showing the Brooklyn Bridge and the Woolworth Building with the tag line "Special Education Lawyers for New York City and New York State."  http://www.cuddylawfirm.com.

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

In determining an appropriate hourly rate, "the district court should consider, among others, the Johnson factors. . . ." Id. (referencing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by* Blanchard v. Bergeron, 489 U.S. 87, 92-93 (1989).[3]

The attorneys in this case are experienced in administrative hearings of this type. Andrew Cuddy was admitted to the bar of the state of New York in 1996 (1/13/2011 Decl. Andrew Cuddy ¶ 29) and Michael Cuddy was admitted in 1989. (1/13/2011 Decl. Michael Cuddy ¶ 2.) Both are graduates of the University at Buffalo Law School. (1/13/2011 Decl. Andrew Cuddy ¶ 29; 1/13/2011 Decl. Michael Cuddy ¶ 1.) Andrew Cuddy has authored a guide for parents on impartial hearings. (1/13/2011 Decl. Andrew Cuddy ¶ 32.) Michael Cuddy worked as a school district administrator from 1990 to 2009, including as Assistant Superintendent for Human Resources of the Baldwinsville Central School District. (1/13/2011 Decl. Michael Cuddy ¶ 4.) Jason H. Sterne is a 1996 graduate of University at Buffalo Law School and has authored over 60 closing briefs in IDEA hearings. (Decl. Jason H. Sterne ¶¶ 15, 22.) An important consideration under Johnson is the result achieved by the attorneys. Here, as previously described, plaintiff's counsel achieved a favorable result at the administrative hearing, which the DOE elected not to appeal to the State Review Officer.

---

[3] The Johnson factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 187 n.3 (citing Johnson, 488 F.2d at 717-19).

This case, however, was neither novel nor complex.  From the hearing transcripts, the Court cannot discern any difficult legal issues or key credibility disputes in the case.[4]  See E.S. v. Katonah-Lewisboro Sch. Dist., 2011 WL 1560866 at *4 ("The question presented [in a single-student IDEA case of a student diagnosed with schizoaffective disorder and borderline intellectual functioning] was not particularly difficult and did not require extremely experienced counsel.").  The hearing sessions were conducted on non-contiguous dates and usually no more than one live witness was presented on any date with, on occasions, a second witness appearing by telephone.  The DOE was not represented by an attorney in the proceeding before the IHO.  Indeed, non-lawyer advocates may represent parents in hearings before an IHO.  See 20 U.S.C. § 1415(h)(1); 8 N.Y.C.R.R. § 200.5(j)(3)(vii).  Of course, an experienced parent's attorney may be better equipped than a neophyte to identify winning strategies, including the proper relief to seek.  The work in preparing and presenting this case, however, was substantially less challenging than, for example, the work of an attorney presenting a section 1983 claim who must first guide the case through pre-trial discovery and the predictable case dispositive motions before presenting the case to a jury in a persuasive and effective manner consistent with the law of evidence and against an experienced lawyer-adversary.

Another factor to be considered under Johnson is whether counsel worked on a contingency fee basis.  This is a relevant consideration because, in a hypothetical negotiation, a client may be willing to pay an attorney more per hour for a successful result if he or she would pay nothing if the action were not successful.  Here, the firm

---

[4] The precise nature of these hearings will be discussed below in the section addressing whether it was reasonable to have two senior attorneys present at each session.

entered into a contingency arrangement with K.F. in which it agreed that it would only recover fees if she prevailed and the firm was able to recover the fees against the DOE. (Pl.'s Mem. at 17)("[P]ayment . . . depended entirely on the fee-shifting provision, as the parents were indigent."). This arrangement is fundamentally unlike a percentage-of-the-recovery contingent fee deal where a client would retain a vested interest in keeping the attorney's fee percentage as small as possible in order to maximize the client's own recovery. The significance of a client agreed-upon rate of $450 (as the product of an arms-length negotiation) takes on less significance when the client knows it will never pay that amount. Nevertheless, Mr. Cuddy's willingness to take the case on a contingency fee basis is also a factor weighing in his firm's favor.

Additionally, there is no plausible or substantiated basis to conclude that a similarly situated parent with a meritorious claim would not have been able to locate a well qualified attorney willing to proceed with this case. The declaration of an attorney with Legal Services of Advocates for Children of New York, Inc. ("AFC") notes that, for example, AFC at times turns down parents due to staffing shortages or because they do not meet their very low income cap (Decl. Kimberly Madden ¶ 3). But the conclusion that there is a shortage of willing attorneys to take on IDEA cases is undercut by the existence of the fee-shifting provision and the number of attorneys who practice in this arena as evidenced by the submissions of the parties.[5] True, K.F. did not know of the existence of any willing attorney or advocate until referred to the Cuddy firm by Bronx Lebanon Hospital but that does not mean that the case was "undesirable" or that other

---

[5] According to the DOE's submission, since 2005 there have been 811 lawyers and non-lawyer advocates representing parents in IDEA hearings. (2/24/2011 Decl. Christopher Harriss ¶ 5.)

8

experienced attorneys, attracted by the fee-shifting provisions, would have turned down the case.[6]

Finally, the plaintiff has not established that her counsel's rates are in line with the prevailing rate for legal services in this District.  Plaintiff's counsel has submitted affidavits from several attorneys who represent parents seeking relief under IDEA.  In one instance, an affiant asserts an hourly rate of up to $600 per hour.  The initial submissions, however, did not reveal "whether these rates represent fees actually paid by parents in IDEA cases in which a hearing was demanded but in which there was no fee shifting (presumably because the parent did not prevail) or, instead, fees consensually paid by a losing school district under the statutory fee-shifting scheme." (6/15/2011 Order at 2, Docket # 43.)  Accordingly, the parties were directed to supplement their submissions.  The Court has reviewed the initial and supplemental submissions of plaintiff's counsel and the supplemental submissions of the DOE.  The Court need not recount in the body of this Memorandum and Order all that it has considered but it has considered the entirety of all submissions.[7]

One lawyer not involved in the case, Jesse Cole Cutler, has supported plaintiff's fee request with a declaration that he charges $350 per hour.  (7/18/2011 Decl. Jesse Cole Cutler ¶ 9.)  He cites three IDEA cases that he handled during 2010.  (Id. at ¶¶ 9-11.)  In each of the three, he recorded 30, 69.5 and 76.5 hours, which at his billing rate of $350 per hour would have resulted in fees of $10,675, $24,325 and $26,775 (the

---

[6] A web search would have been a simple place for a parent to start.  For example, Mr. Cuddy and several of those who have submitted declarations on his behalf are listed on a special education lawyer referral website located at http://www.copaa.org/find-a-resource/find-an-attorney.

[7] The Court thanks counsel for their work in assembling all of the materials.  The Court has concluded that much of the information presented by the DOE concerning negotiated compromises of attorney's fee demands (information that the Court requested) is not a good proxy for the hypothetical negotiation between lawyer and client because the DOE's motives to settle may arise from fundamentally different considerations than those faced in the parent-client fee negotiation.

9

"billable amounts") respectively.  (Id.)  In the three cases, the DOE settled the attorneys'

fees amounts for sums less than the billable amounts: $10,675, $18,400 and $20,000.

(Id.)  In one of the three, the parents paid the difference between the billable amount and

the amount recovered from DOE and in the other two, the parents had previously paid

more than the difference between the billable amounts and the amount recovered from

DOE and received a refund.  (Id.)

   Another supporter of plaintiff's fee request, Adrienne J. Arkotaky,

declares that she bills at $350 per hour.  (7/10/2011 Decl. Adrienne J. Arkotaky ¶ 6.)  She

cites one IDEA case that she handled through hearing in which she or her colleagues

billed 16.75 hours at $325 per hour, 18.5 hours at $230 per hour and 14.25 hours of

paralegal time at $225 per hour, resulting in a billable amount of approximately $13,000.

(Id. at ¶ 7.)  DOE paid $9,000 towards the billable amount and $3,844 was received from

the parent in full satisfaction of the $4,000 deficit.  (Id.)  She (or her firm) has handled

other recent matters short of a hearing before an IHO at attorney hourly rates ranging

from $260 to $350 per hour.  (Id. at ¶¶ 8-11.)

   Also in support of plaintiff's fee request, Barbara Ebenstein declares that

she offers parents what she describes as a "package" for representation at certain

meetings with school officials that are premised on several hours work at $450 per hour

for some of 2010 and $500 at the end of 2010.  (7/15/2011 Decl. Barbara J. Ebenstein ¶

3.)  Gary Mayerson, who has represented "many hundreds of families in IDEA cases,"

asserts that he charges $600 per hour.  (7/15/2011 Decl. Gary S. Mayerson ("Mayerson

Decl.") ¶ 4.)  Associate rates range from $250 per hour to $425 per hour and paralegals

are billed at $125 per hour.  (6/12/2009 Engagement Letter, attached at Mayerson Decl.,

Ex. A.)  He candidly and appropriately acknowledges that, where circumstances warrant, he adjusts a bill for a client or compromises a fee application made to the DOE or school district.  (Mayerson Decl. ¶ 6.)

Courts commonly look at fee awards approved in other similar types of cases.  For example, Judge Holwell recently cited Magistrate Judge Gorenstein's 2007 survey of "attorneys' fees awarded in this district[, which] found that '[w]ithin the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district.'"  Kahlil v. Original Old Homestead Rest., Inc., 657 F.Supp.2d 470, 476 (S.D.N.Y. 2009) (quoting Reiter v. MTA of New York, 01 Civ. 2762 (GWG), 2007 WL 2775144, *7 (S.D.N.Y. Sept. 25, 2007));[8] see also A.R. ex rel. R.V., 407 F.3d at 82 (concluding that a Southern District court did not abuse its discretion in setting reasonable rates for services rendered in 2000 and 2001 at impartial hearings under IDEA at between $300 and $350 per hour).  Quite recently, Chief Judge Preska, considering the appropriate hourly rate for the managing partner of a firm with fourteen years experience litigating IDEA cases, concluded that a fee of $415 was unreasonably high and awarded a rate of $350 per hour.  E.S. v. Katonah-Lewisboro Sch. Dist., 2011 WL 1560866 at *5.

Utilizing the above case-specific factors and considering the record as a whole, this Court approximates the market rate prevailing in this District for similar services by lawyers of reasonably comparable skill, experience and reputation as $375

---

[8] The survey was not specific to IDEA cases and the age of the survey must be taken into account.

per hour.  Premised upon the same considerations, a rate of $125 per hour is reasonable

for a paralegal with an associate's degree and substantial experience in the field.[9]

       C.     Travel from Ithaca, NY and Auburn, NY to Brooklyn, NY

           Lawyers frequently need to travel to interview witnesses and conduct

depositions as a necessary adjunct to their services for a client.  It is appropriate that they

be compensated for doing so.  Generally, courts have approved 50% of hourly rates for

time spent in travel.  Weather v. City of Mount Vernon, 08 Civ. 192 (RPP), 2011 WL

2119689, *4 (S.D.N.Y.  May 27, 2011) (citing Gonzalez v. Bratton, 147 F.Supp.2d 180,

213 n.6 (S.D.N.Y. 2001)).  Indeed, the Second Circuit has characterized the half-rate as

"established court custom."  Barfield, 537 F.3d at 139.

           The type of travel time for which plaintiff's counsel seeks reimbursement

at half-rate, however, is of a fundamentally different nature.  It is the time spent travelling

from their home cities in Auburn, NY (in the case of Andrew Cuddy) and Ithaca, NY (in

the case of Michael Cuddy) to the hearing in Brooklyn NY, some 240 miles and five

hours away.  In the case of Michael Cuddy, 40 of the 106.1 hours billed on the case is

travel time.  (Pl.'s Mem. at 24.)  Similarly, in the case of Andrew Cuddy, 40 of the 92.7

hours billed is travel time.  (Id.)  Ancillary to the foregoing, the firm seeks reimbursement

for a three-night hotel stay between two hearing dates and reimbursement for tolls,

parking and mileage for each attorney's separate automobile travel to and from Auburn

and Ithaca.  (Invoice p.14-15, attached at 1/13/2011 Decl. Andrew Cuddy, Ex. E.)

---

[9] A fee of $75 an hour was found reasonable for work on an IDEA impartial hearing in 1999. A.R. ex rel. R.V. 407 F.3d at 72 n.8, 83; see also Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 151-53 (2d Cir. 2008) (affirming district court's determination to award $75 per paralegal hour in an FLSA case in this District).

In a hypothetical negotiation with a client who, unlike K.F., would be on the hook for attorney's fees in the event the case were lost, it is doubtful that a reasonable client would retain an Auburn or Ithaca attorney over a New York City attorney if it meant paying New York City rates and an additional five hours in billable time for each trip. A reasonable attorney's fee does not include the time for commuting from Auburn or Ithaca to Brooklyn and back. See U.S. *ex rel.* Feldman v. Van Gorp, 03 Civ. 8135 (WHP), 2011 WL 651829, *3 (S.D.N.Y. Feb. 9, 2011) (denying attorney's fees for travel time and costs related to travel to this District by Philadelphia-based lawyer in an IDEA case); Imbeault v. Rick's Cabaret Intern. Inc., 08 Civ. 5458 (GEL), 2009 WL 2482134, *8, n.3 (S.D.N.Y. Aug. 13, 2009) (Lynch, J.) (disallowing fees for travel between home city of Minneapolis and litigation forum in this District in an FLSA case).

> D.    Two Attorneys

Efficient staffing of a case may mean that more than one lawyer is utilized to represent a client. There is nothing remarkable or unusual in the practice, which often leads to lawyers with lower billing rates completing tasks rather than a more senior lawyer with a higher rate. Nor is it per se unreasonable for two or more lawyers to participate in a trial of a case. N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983). The district court should make an "assessment of what is appropriate for the scope and complexity of the particular litigation." Id. Both Messrs. Cuddy appeared on behalf of K.F. on most days at the hearing. The appearance of both attorneys at the hearing was not, for reasons to be explained, reasonable.

The hearing in this case was conducted over a period of five non-contiguous days. On the first hearing day, March 15, 2010, both Messrs. Cuddy were

13

present and each spoke before the IHO. Mr. Andrew Cuddy noted, among other things, that the child was in school. (3/15/2010 Tr. 30:6-11.) Mr. Michael Cuddy noted, among other things, that there was a written agreement between the parties regarding the child's placement. (Id. at 30:22-25.) One witness was called, a special education administrator, and an examination was conducted by the DOE's non-lawyer representative who works as a bilingual social worker. (Id. at 6:18-21; 32:14-33:13.) No legal argument of any sophistication was presented. New dates were selected for the next hearing session. (Id. at 75:20-76:1.) On the next hearing date, April 12, 2010, both Messrs. Cuddy were again present. One of the two Messrs. Cuddy – I cannot tell which one from the transcript – cross-examined the special education administrator. (4/12/2010 Tr. 81:10-17.)

On April 14, 2010, both Messrs. Cuddy were present. The education director of a preschool program testified via telephone. (4/14/2010 Tr. 279:18-21; 284:15-16.) Mr. Michael Cuddy cross-examined the witness. (Id. at 390:14-16.) A second witness testified who was the family's case manager at a shelter facility. (Id. at 294:18-20.) One of the two Messrs. Cuddy – I cannot tell which one from the transcript – briefly crossed examined her. (Id. at 344.)

On April 27, 2010, the DOE was represented by a different lay advocate, a special education administrator. She advised the IHO as follows: "The representative is unable to attend today. She's indisposed, so I rest the case. The Department of Education is resting the case." (4/27/2010 Tr. 438:18-22.) Both Messrs. Cuddy were present and one of the two put on the direct testimony of the mother whereupon the proceeding was adjourned. On May 17, 2010, only Michael Cuddy was in attendance. The original DOE lay representative returned and cross-examined the mother.

(5/17/2011 Tr. 556:5-12.)  The child's classroom teacher was called by Michael Cuddy and testified via telephone subject to cross-examination.  (Id. at 641:16-18.)  The hearing closed with the setting of a schedule for post hearing submissions. (Id. at 699:23-700:3.)

The foregoing does not adequately convey the informal nature of the proceedings.  No session began before 10:30 a.m. (one began at 12:30 p.m.) with all sessions ending between 3 p.m. and 4 p.m., with the exception of one that ended at 4:30 p.m.  None of the sessions were on contiguous dates.  A lawyer in any administrative proceeding, including this proceeding, should be skilled, diligent and prepared, as were these lawyers.   But the novelty, complexity and time pressures (or lack thereof) did not require two senior lawyers in attendance at multiple sessions.[10]  I have considered the plaintiff's arguments that the dual attorneys were necessary because it facilitated note taking and communication with the parent; I find the argument to be unpersuasive and substantially overstated.  A reasonable attorney's fee does not include the time of a second lawyer at these sessions.

The time spent by Jason H. Sterne, described as "principal brief-writer" (Pl.'s Mem. at 18) stands on a different footing.   It was efficient and non-duplicative for the firm to use his services for 27.5 hours.

CONCLUSION

Plaintiff's counsel's application for attorney's fees is GRANTED in part and DENIED in part to the extent indicated in this Memorandum and Order.   By September 2, 2011, plaintiff's counsel shall file a revised submission consistent with this Court's rulings.

---

[10] All cases are different.  I note, however, that most defendants in serious felony cases, including those facing mandatory minimum prison terms, are represented by a single highly-competent attorney who ably performs at a trial held day-after-day, sometimes over a period of weeks.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 10 , 2011